CHARLES I. GILBERT, Respondent, *v.* NEW YORK LIFE INSURANCE COMPANY, Appellant.

First Department, June 2, 1933.

*Donald C. Leo* of counsel [*Louis H. Cooke,* attorney], for the appellant.

*Harris Jay Griston,* for the respondent.

MERRELL, J. Plaintiff brings this action to recover from the defendant the amount of the first two annual premiums received by said defendant under a policy of life insurance which defendant

had issued on the life of plaintiff, and the further sum of $200 which plaintiff alleges he paid to the soliciting agent who procured plaintiff's application for the policy. Plaintiff bases his claim for repayment of the said premiums and the amount which he alleges he paid to the soliciting agent upon the claim that the defendant had repudiated its obligations under the contract of insurance by wrongfully declaring the policy lapsed for non-payment of the third annual premium, and that plaintiff has the right to rescind the contract and recover back said two premiums admittedly paid, and the further sum of $200 which plaintiff claims he paid to the soliciting agent. In defense to the plaintiff's claim the defendant asserts that it acted within its rights in declaring the policy lapsed for the non-payment of the third annual premium, and that, as a matter of fact, there was no repudiation by the defendant insurance company of its obligations under the contract. The defendant also contends that, even if the defendant was wrong in asserting that the policy has lapsed for non-payment of the third annual premium, plaintiff cannot sue for damages or for the return of the premiums paid, but, at most, was relegated to an action in equity to compel reinstatement of the policy. The policy in suit was issued to the plaintiff by the defendant on May 11, 1926, and was for $10,000 on the twenty-payment life plan. The policy provided for the payment of annual premiums of $387.90, each payable on the eleventh day of May in each year. The policy contained the following pertinent provisions, which we deem to be decisive of the questions presented upon this appeal. On the last page of the policy, under the heading entitled " The Contract," the policy provides as follows: " No agent is authorized to make or modify this contract, or to extend the time for the payment of premium, or to waive any lapse or forfeiture or any of the Company's rights or requirements." The application for the policy was expressly made a part of the contract, and in such application we find the following provision: " That only the President, a Vice-President, a Second Vice-President, a Secretary or the Treasurer of the Company can make, modify or discharge contracts, or waive any of the Company's rights or requirements; that notice to or knowledge of the soliciting agent or the Medical Examiner is not notice to or knowledge of the Company, and that neither one of them is authorized to accept risks or to pass upon insurability." On the last page of the policy, under the heading " Payment of Premiums," there appears the following: "All premiums are payable on or before their due date at the Home Office of the Company or to an authorized agent of the Company, but only in exchange for the

Company's official premium receipt signed by the President, a Vice-President, a Second Vice-President, a Secretary or the Treasurer of the Company, and countersigned by the person receiving the premium. No person has any authority to collect a premium unless he then holds said official premium receipt." On the same page, under the paragraph entitled " Payment of Premiums," the contract provides: " The payment of the premium shall not maintain the Policy in force beyond the date when the next payment becomes due, except as to the benefits provided for herein after default in premium payment." Under the provisions of the policy with relation to " Loan Values " and " Surrender Values," it clearly appears that, until the premiums for three full years have been paid, there is no loan or cash surrender value attached to the policy. In the paragraph of the policy entitled " Reinstatement," we find the following provision: " This policy may be reinstated at any time within five years after any default, upon written application by the Insured and presentation at the Home Office of evidence of insurability satisfactory to the Company and upon payment of overdue premiums with five per cent interest thereon from their due date." The evidence shows, beyond dispute, that the plaintiff paid the first two annual premiums, which fell due on May 11, 1926, and May 11, 1927. In due course, notice relating to the payment of the premium of $387.90 falling due May 11, 1928, was forwarded to the plaintiff and he received the same. Such premium notice sent to and received by the plaintiff contains the following provisions: " Payment must be made to the Company's Premium Cashier at the Home Office, 346 Broadway, New York, N. Y. Office Hours, 9 A. M. to 3 P. M. Saturdays, 9 A. M. to 12 M. only.

" Unless said payment shall be made to the Company or to the duly appointed agent or person authorized to collect it by or before the day it falls due, said Policy and all payments thereon will become forfeited and void except that this notice shall not affect either the period of grace, or the right to non-forfeiture benefits, if provided for in the Policy or by statute.

" Make payments only in exchange for the Company's official premium receipt signed by the President and countersigned by the person to whom payment is made."

Plaintiff testified that, after receiving such premium notice and some time early in June, he gave to one Friedman, the soliciting agent, a check for $187.90, and stated to Friedman that he would like another thirty days' grace for the payment of the balance. It is evident that Friedman forwarded to the defendant's home office the check which he had received from plaintiff and made

known to the home office the plaintiff's request for an extension of time to pay the balance of the premium due on May 11, 1928. A little later the plaintiff received a letter from the defendant stating that it could not accept part payment of the premium, and that it was inclosing a note for the balance of $200, to be executed by plaintiff and returned with the check. Plaintiff testified that the check which he had given Friedman for $187.90 was not inclosed with the letter, although the letter stated that it was inclosed. The plaintiff failed to produce the letter which he had testified he had received from the defendant, although notice to produce the same was served by the defendant's attorney. Plaintiff did not execute the note and did nothing further until shortly after July 4, 1928, when Friedman, the soliciting agent, called upon him, and, in a conversation between plaintiff and Friedman, plaintiff claims to have told Friedman that he did not want to borrow any money on the policy, as he then had sufficient cash to pay the balance of the premium, and that he then gave $200 in cash to Friedman, who signed a receipt for the cash on the letter written to him, Friedman, on July 5, 1928, by one Sussmann, cashier of the Madison Square branch office of the defendant. This letter to Friedman from the cashier of the Madison Square branch office of the defendant was admitted in evidence, and in that letter Friedman was advised that the policy in suit had lapsed for non-payment of premium due. The letter further suggested that Friedman at once endeavor to have the policy reinstated. Upon this letter Friedman receipted the payment to him of the $200 on account. Plaintiff never, at any time, received the " official premium receipt " mentioned in the policy and in the premium notice. The only receipt ever received by plaintiff showing payment of any part of the third annual premium was the receipt for $200 cash indorsed upon the letter which Friedman had received from Sussmann, the cashier of defendant's Madison Square branch. In May, 1929, the plaintiff telephoned Friedman advising him that he had not received any notice for the fourth annual premium falling due on May 11, 1929. Plaintiff claims that he was unable to obtain any satisfactory information from Friedman, and in the following September, after the plaintiff had returned from a vacation, he visited the Madison Square branch office of the defendant and talked with Sussmann, defendant's cashier at said branch. Sussmann examined the records and advised plaintiff that the premium for May 11, 1928, had not been paid, and that the policy had lapsed. Plaintiff then went to the premium collection division at the home office of the company and there talked with a Mr. Chase, who examined the company's records and advised the insured that the records indicated

that the premium due May 11, 1928, had not been paid, and also advised plaintiff that if he would pay the premium arrears the company would probably be willing to reinstate the policy. It is, therefore, entirely apparent, from plaintiff's admissions on the witness stand, that at no time did the company refuse to have further dealings with the plaintiff or to carry out the provisions of the contract of insurance into which the defendant had entered, and that the company advised plaintiff that it had no record of payment of the premium due on May 11, 1928. The plaintiff, on cross-examination, disclaimed any recollection of ever having thoroughly read the policy or the provisions of the premium notice. He disclaimed any knowledge that the policy provided that payment of the premium should be made at the home office of the company or to a representative of the company *having in his possession the official premium receipt for delivery.* Plaintiff also admitted that there was nothing in the letter which he received from the defendant inclosing the note for $200 for his signature advising him that he might handle the matter with reference to the premium through Mr. Friedman. Plaintiff claimed that the letter from Sussmann to Friedman, which he read, led him to believe that Friedman was a proper person to whom payment of the premium might be made. In such assumption, under the plain terms of the policy, plaintiff was clearly in error. Plaintiff, of his own volition, chose to rely on the honesty of Friedman and to make him his own agent for the purpose of paying the premium to the defendant. It was admitted on the trial by plaintiff that the defendant had never collected the proceeds of the check for $187.90. Plaintiff offered no evidence whatever that the $200 in cash was ever turned over by Friedman to the defendant company. As a matter of fact, the defendant company has never received the $200 in cash, and never cashed the check for $187.90. An assistant premium cashier of the defendant, one Searing, identified the premium records of the defendant, which were received in evidence, and which records disclose that no part of the premium due May 11, 1928, was ever paid to the defendant. Searing testified that the defendant did not receive either the check for $187.90 or the $200 in cash which plaintiff claims to have paid to Friedman.

Under the facts above set forth, we are of the opinion that the defendant acted well within its legal rights in declaring the policy in suit to be lapsed for non-payment of the premium due on May 11, 1928, and that at no time did the defendant repudiate any of its obligations under the policy contract. As to the premium of $387.90 falling due on May 11, 1928, the plaintiff, before the expiration of the grace period, gave to the soliciting agent, Friedman,

a check for $187.90 and told Friedman that he would like another thirty days' grace for the payment of the balance. Such action on the part of the plaintiff was clearly contrary to the plain provisions of the policy, and to the directions printed on the premium notice which he received. He was bound to know, from such provisions contained in the policy and directions in the premium notice, that the soliciting agent was not the proper person to whom payment of the premium could be made. It appears that when Friedman received the plaintiff's check for $187.90, he forwarded the same to the home office and later received a letter from the home office advising him that the company could not accept part payment of the premium, and that it was inclosing a note for the balance of $200 to be executed by the plaintiff and returned with the check for $187.90. Plaintiff never executed the note, and it is conceded that the check for $187.90 was not used by the defendant and that it never cleared plaintiff's bank. After the defendant received from Friedman the check for $187.90, it promptly notified plaintiff that it could not accept part payment, and under the terms of the policy Friedman had no authority whatever to extend the time for payment of the premium. The $200 note, which the defendant forwarded to Friedman in order that the latter might obtain the signature thereon of plaintiff, was what is generally known, under its system, as a premium lien note, and such note becomes a lien against the policy and need never be repaid, the amount thereof being deductible in any settlement under the policy. Plaintiff apparently ignored the request of the defendant that he execute the premium lien note for $200, and did nothing whatever with regard to the matter until after July 4, 1928, long after the expiration of the thirty days' grace period provided in the policy for the payment of premium. It was not until the soliciting agent called at plaintiff's home with the letter from the branch office cashier advising that the policy had lapsed and that he, Friedman, should endeavor to have it reinstated, that the plaintiff claims to have given to the soliciting agent the $200 in cash, the latter indorsing on the letter which he had received from the defendant's cashier a receipt of the said sum of $200, which he handed to plaintiff. The policy is clear and unambiguous that the soliciting agent had no power whatever to modify the contract or to extend the time for the payment of the premium, or to waive any lapse or forfeiture of any of the company's rights or requirements. *When this $200 was paid by the plaintiff to Friedman, the policy, under its terms, had already lapsed for non-payment of the premium due on May 11, 1928.* The policy in suit contained a provision that it might be reinstated at any time within five years after default upon the written application

of the insured and presentation at the home office of evidence of insurability satisfactory to the company and upon payment of overdue premiums with five per cent interest thereon from their date. Plaintiff was bound by all the provisions of the policy in regard to the payment of premiums and as to reinstatement after default. Plaintiff was also bound by the provisions of the policy that only the president, a vice-president, a second vice-president, a 'secretary or the treasurer of the company was authorized to make, modify or discharge contracts or waive any of the company's rights or requirements. These provisions of the contract are so plain as to make citation of authorities in their support quite unnecessary.

It is the contention of the plaintiff that he was misled by the letter written by Sussmann to Friedman, to which reference has been made, but the letter contained nothing which could have led the plaintiff to believe that it would not be necessary to make a written application for reinstatement to the home office of the company in the usual manner. The clear purport of this letter was to authorize the soliciting agent to take from the plaintiff his written application for reinstatement and the money necessary to be paid, for the sole purpose of transmission to the proper authorities at the home office where the matter of reinstatement would be considered and passed upon. Under no possible interpretation of this letter can it be said that the payment of $200 to the soliciting agent constituted a reinstatement of the lapsed policy. Even though the defendant was wrong in declaring the policy lapsed for non-payment of the third annual premium, there can be no recovery of the first two annual premiums. In this case the defendant took the position with the plaintiff that as he had not paid the third annual premium due under his policy on May 11, 1928, the policy had lapsed. The defendant, however, asserted its willingness to consider the plaintiff's application for reinstatement, and, if approved, would accept payment of said premium. On the witness stand plaintiff himself admitted that he had such an offer right along. Plaintiff testified: " I saw Mr. Chase, and he said if I would pay last year's premium, they would very likely reinstate the policy, and I could pay this year's premium. As a matter of fact, I had that offer right along, that if I would pay the premium, they would reinstate the policy." Even assuming that the defendant was wrong in declaring the policy to be lapsed, the plaintiff should not be permitted to rescind the contract and recover back all the premiums paid from the time of the issuance of the policy. The decisions in this State hold that the proper remedy of an insured where the insurance company has declared a policy lapsed is an action in equity to compel the defendant to recognize the policy as being in force. The cases in this

State hold that where an insurance company repudiates its obligations, there cannot, in any event, be any recovery of the premiums paid. (*Skudera* v. *Metropolitan Life Insurance Co.*, 17 Misc. 367; *Keyser* v. *Mutual Reserve Fund Life Association*, 60 App. Div. 297; *Speer* v. *Phœnix Mutual Life Insurance Co.*, 36 Hun, 322.) Each of the authorities above cited clearly holds that in the event of the wrongful forfeiture and repudiation by the insurance company, the insured may not, in any event, recover back premiums that he had paid. While those cases also hold that a recovery may be had by way of damages for the breach, the Court of Appeals, in *Kelly* v. *Security Mutual Life Insurance Co.* (186 N. Y. 16), overruled said decisions in that respect, the Court of Appeals holding that the doctrine of allowing damages for an anticipatory breach should not be extended to mutual life insurance company cases. The decision in *Kelly* v. *Security Mutual Life Insurance Co.* (*supra*) was recently cited with approval by Chief Judge CARDOZO in the case of *Killian* v. *Metropolitan Life Insurance Co.* (251 N. Y. 44). At the bottom of page 48, Judge CARDOZO had this to say, with reference to a contract for life insurance: "Repudiation before maturity (the subject of the contract being a policy of insurance) is not even such a breach as will sustain a remedy at law for the recovery of damages (*Kelly* v. *Security Mut. Life Ins. Co.*, 186 N. Y. 16), though it may be the occasion for a declaratory judgment or other remedy in equity." The basis of the decisions of the *Skudera, Keyser* and *Speer* cases, above cited, in refusing to permit a recovery of the amount of premiums paid, was the fact that during the continuance of the policy in force the assured had received substantial benefits in the form of the insurance protection afforded by the policy. In the case at bar these benefits were substantial. In case of the death of the insured, his beneficiary was to receive $10,000. In case of the insured's death by accident, the company's liability was to pay the beneficiary $20,000. In the event of total disability of the insured, the defendant's liability was to pay the insured a monthly income of $100 so long as the disability continued; and in the event of total disability of the insured, the liability was to waive payment of all premiums falling due during the continuance of such total disability. Plaintiff also was entitled to cash surrender and loan values provided for in the policy while in force, but until after the payment of three annual premiums there was, in fact, no surrender value.

We are, therefore, of the opinion that the defendant company was right in declaring the policy in suit lapsed for non-payment by the plaintiff of the premium due on May 11, 1928, and that, in any event, no action at law will lie, under the circumstances of this case, to recover back the first two premiums paid.

The determination of the Appellate Term should be reversed and the judgment of the Municipal Court should be reversed and plaintiff's complaint dismissed, with costs in favor of the defendant, appellant, against the plaintiff, respondent, in all courts.

FINCH, P. J., MCAVOY, MARTIN and TOWNLEY, JJ., concur.

Determination of the Appellate Term so appealed from and the judgment of the Municipal Court reversed and the complaint dismissed, with costs to the appellant in all courts.